# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| CENTURYTEL OF CHATHAM, LLC, ET AL. | CIVIL ACTION NO. 09-1951 |
| VERSUS | JUDGE ROBERT G. JAMES |
| SPRINT COMMUNICATIONS COMPANY LP | MAG.  JUDGE MARK HORNSBY |

# RULING

Pending before the Court is the Post-Judgment Memorandum in Support of CenturyLink's Request for Additional LPCs and Costs for Sprint's Tariff Violations (Counts I and IV) and for Prejudgment Interest and Attorneys' Fees for Sprint's Violation of 47 U.S.C. § 201(b) (Count III) [Doc. No. 215].  Sprint has filed a response [Doc. No. 222] to CenturyLink's memorandum. CenturyLink has filed a reply memorandum [Doc. No. 232].

For the following reasons, the CenturyLink Plaintiffs' requested fees, costs, and relief are GRANTED IN PART and DENIED IN PART.

## I.    Late Payment Charges

In its May 4, 2016 Judgment [Doc. No. 214], the Court awarded the CenturyLink Plaintiffs late payment charges of $3,805,343.00 as of February 2, 2016, and additional late payment charges accruing since that date.

The CenturyLink Plaintiffs contend that an additional $223,508.47 is due in late charges as of June 1, 2016, the date that Sprint's response to the memorandum was due.  They rely on an affidavit from Sidney C. Eppinette, Jr. ("Eppinette"), the Director of Carrier Access Billing for CenturyLink.  Eppinette averred that after June 1, 2016, the late payment charges would continue

to increase by "more than $2135 per day." [Doc. No. 215, Exh. 129].

Sprint does not challenge the CenturyLink Plaintiffs' calculations or that the payments are due under the Court's Opinion for the period from February 2, 2016, to the date of entry of judgment. However, Sprint contends that the late payment charges are due only until May 4, 2016, when the Court's Opinion issued. Sprint argues that once a cause of action is reduced to judgment, the contractual interest rate and the judgment merge, "'and the contractual interest rate therefore disappears for post-judgment purposes.'" [Doc. No. 222 (quoting *Tricon Energy v. Vinmar Int'l Ltd.*, 718 F.3d 448, 457 (5th Cir. 2013) (citation omitted))]. Post-judgment interest, rather than any contractual rate, then begins to accrue.

In their reply memorandum, the CenturyLink Plaintiffs argue that Sprint's position is inconsistent with its earlier statement that the Court's Opinion "'did not dispose of all claims between the parties, and therefore is not a final, appealable, judgment.'" [Doc. No. 232 (quoting Doc. No. 222, p. 1]. The CenturyLink Plaintiffs thus re-urge their argument that Sprint must pay late payment charges until the Court's Opinion is designated as a final judgment under Federal Rule of Civil Procedure 54(b).

The Court has ordered the award of late payment charges to the CenturyLink Plaintiffs. Further, the CenturyLink Plaintiffs have recovered a money judgment and thus are entitled to post-judgment interest which "shall be calculated from the date of the entry of **judgment**." 28 U.S.C. § 1961 (emphasis added). Finally, under Fifth Circuit precedent, once judgment is entered, the contractual rate of interest (i.e. the late payment charges in this case) "disappears" and post-judgment interest begins to run. *See Tricon*, 718 F.3d at 457. However, the parties dispute whether the Court's May 4, 2016 Opinion constituted a "judgment" under § 1961, even though it is not a

2

final, appealable judgment under Federal Rule of Civil Procedure 54(a).  If, as the CenturyLink Plaintiffs contend,  § 1961 refers only to final, appealable judgments, then the late payment charges continue to run until the May 4, 2016 Opinion is designated as a final judgment.  However, if the May 4, 2016 Opinion was a judgment under § 1961, then the late payment charges ended on May 4, 2016, and post-judgment interest began to accrue.

Section 1961 does not define the term "judgment."  Moreover, the Court of Appeals for the Fifth Circuit has not directly addressed whether a judgment under § 1961 is synonymous with a final, appealable judgment under Rule 54(b).  One district court in this Circuit has previously stated that "[t]he 'entry of judgment' in § 1961 does not contemplate a final, appealable judgment."  *Masinter v. Tenneco Oil Co.*, Civ. A. No. 85-1919, 1991 WL 197154, at *1 (E.D. La. Sept. 11, 1991).  However, the cases cited by the Eastern District of Louisiana do not stand for this general proposition.  *Cf. Marshall v. Perez-Arzuage*, 866 F.2d 521 (1st Cir. 1989); *Maxey v. Freight Liners Corp.*, 727 F.2d 350 (5th Cir. 1984).  Rather, those cases stand for the proposition that post-judgment interest under § 1961 begins to run from entry of final judgment, not from subsequent rulings on post-trial motions, such as a motion for judgment as a matter of law (previously known as a motion for judgment notwithstanding the verdict) or a motion for new trial.

Of the circuit courts which have considered this issue, the majority have interpreted § 1961 to require a final, appealable judgment.  *See MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/American Ex., Inc.*, 962 F.2d 1470, 1476 (10 Cir. 1992) ("Any available postjudgment interest began to accrue on April 22, 1991, the date the fees were meaningfully ascertained and included in a final, appealable judgment."); *Foley v. City of Lowell, Mass.*, 948 F.2d 10, 17 (1st Cir. 1991) ("We hold, further, that when a final judgment is entered which includes a sum of money for

attorneys' fees, interest will accrue on the attorneys' fee portion of the judgment, under the postjudgment interest statute, 28 U.S.C. § 1961, from the date the judgment is entered, but not from a date prior to entry of judgment."[1]); *Dishman v. UNUM Life Ins. Co. Of America*, 269 F.3d 974, 991 (9th Cir. 2001) ("A final, appealable judgment is a clear dividing line: either one exists, or one does not. . . . If plaintiffs want postjudgment interest to start, or defendants want prejudgment interest to stop, they will likely take action to ensure that the judgment is final. . . Thus, we hold that 'judgment' within the meaning of 28 U.S.C. § 1961 means 'final, appealable order[.]'"); *cf. Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 217 (3d Cir. 2004) (finding that "§ 1961 does not, by its terms, mandate that the judgment from which interest is calculated must be a final judgment. . . However, while postjudgment interest can begin to accrue on a non-final judgment . . . the phrase 'any money judgment' . . . requires that the judgment at issue award a fixed amount of fees to the prevailing party in order to trigger the post-judgment interest period.") (internal quotation marks and citations omitted).

The Court agrees with the majority of courts which have addressed this issue and finds that as a general rule "judgment" within the meaning of § 1961 means a final, appealable judgment. As a matter of equity, if the judgment is not final, the parties have the ability to address this issue, as they have in this case, by filing a motion to certify the judgment as final. Thus, such a rule is clear, and any potential inequity can be resolved easily.

Before reaching a final conclusion, the Court also considered the effect of the MDL transfer in this case. This is not a scenario, for example, where the Court has entered summary judgment on

---

[1]Indeed, the First Circuit cites the earlier *Marshall* decision relied upon by the Eastern District of Louisiana to support its holding. 948 F.2d at 22.

one or more claims, or for one or more parties, but certain other claims remain to be tried by the Court.  Rather, the Court has tried and issued its final opinion on all the claims that are before it at this point.  The only claims that remain are Sprint's Counterclaims V, VI, VII, and VIII, which were separated from this litigation by the United States Judicial Panel on Multidistrict Litigation and were transferred, pursuant to 28 U.S.C. § 1407, for pretrial proceedings.  *See* [Doc. No. 77].  However, at the conclusion of pretrial proceedings, the transferred claims will presumably be remanded to this Court.  *See* 28 U.S.C. § 1407(a) ("Each [transferred] action shall be remanded by the panel at or before the conclusion of . . . pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated.").  Thus, the transferred claims have not been disposed of and remain "pending."  Under these facts, the Court's May 4, 2016 Opinion, while addressing all claims that are presently before it, did not address all claims in the case.

In *Gelboim v. Bank of America Corp.*, 135 S. Ct. 897 (2015), the Supreme Court considered whether the right to appeal is "affected when a case is consolidated for pretrial proceedings in multidistrict litigation (or MDL) authorized by . . . § 1407."  *Id.* at 901.  "Cases consolidated for MDL pretrial proceedings ordinarily retain their separate identities, . . . so an order disposing of one of the discrete cases in its entirety should qualify under § 1291 as an appealable final decision."  *Id.* at 904.  The Supreme Court noted that "Section 1407 refers to individual 'actions' which may be transferred to a single district court, not to any monolithic multidistrict 'action' created by transfer."  *Id.* (citation omitted).  Further, "Congress anticipated that, during the pendency of pretrial proceedings, final decisions might be rendered in one or more of the actions consolidated pursuant to § 1407" because the statute specifies that "'at or before the conclusion of . . . pretrial proceedings,' each of the transferred actions must be remanded to the originating district *unless [the action] shall*

*have been previously terminated.*'"*Id.* at 905 (quoting § 1407(a)) (emphasis in original).  Therefore, the Supreme Court held that a district court's judgment dismissing an individual action on its merits constituted a final judgment and is immediately appealable.

Applying this decision, the Court finds that the reverse would be true as well: the Court retains jurisdiction over all claims, so a judgment which dismisses fewer than all of those claims (even if the remaining claims are before the MDL court) is not a final judgment.

Based on the Court's adoption of the majority rule and after considering the effects of the MDL proceedings, the Court finds that the CenturyLink Plaintiffs are entitled to recover late payment charges until the Court enters an order declaring its May 4, 2016 Judgment final under Rule 54(b).  As the Court intends to enter the said order simultaneously with the entry of this Ruling and Judgment, the CenturyLink Plaintiffs are AWARDED additional late payment charges for the period between February 3 and July 25, 2016, in the amount of $368,649.93.[2]

## II.    Costs

The CenturyLink Plaintiffs submitted a Bill of Costs with supporting documents, seeking an award of $11,899.34.  The costs are itemized as follows:

(1)     $9,224.75 for printed or electronically recorded transcripts:

    (a)     $690.00 for the deposition transcripts of Mike Hunsucker ("Hunsucker") and Eppinette;

    (b)     $2,021.50 for the deposition transcripts and video of Sprint's expert, Don J. Wood ("Wood"); and

    (c)     $5,283.20 for the deposition transcripts and video of the CenturyLink Plaintiffs' Rule 30(b)(6) designees, Paul W Schieber ("Schieber"), Peter

---

[2]The Court relies on Epinnette's calculations of $253,359.93 through June 1, 2016, and $2135.00 per day thereafter.

Sywenki ("Sywenki"), Amy Clouser ("Clouser"), and Mark Felton ("Felton");

(d)    $1,230.05 for trial transcripts;

(2)    $464.59 for copies made for use during the depositions of Hunsucker, Eppinette, Clouser, and Felton; and

(3)    $2,210.00 for the time of Sprint's expert, Wood, in preparation for and during his deposition.

[Doc. No. 215, Exh. 130].

Sprint challenges the CenturyLink Plaintiffs' recovery of costs for both video depositions and transcripts of depositions of the same deponent(s).  Sprint cites the Court to its previous decision in another case, *Luv N' Care, Ltd. v. Groupo Rimar*, No. 14-2491, 2015 WL 9463189, at *5 (W.D. La. 2015), limiting the prevailing party to recovery of the transcript costs.  Additionally, although Sprint admits that the CenturyLink Plaintiffs used the video deposition of Paul W. Schieber at trial, Sprint argues that the video was duplicative of transcript designations and not relied upon by the Court.  Finally, Sprint argues that the Court should disallow the cost of deposition live feeds used by CenturyLink employees and counsel not present at the depositions to view them in real time.  In total, Sprint challenges $3,872.50 of the costs.

In their reply memorandum, the CenturyLink Plaintiffs deny that the videotaped depositions were duplicative and unnecessary.  Two of the videotaped depositions were of Sprint's Rule 30(b)(6) designees, Schieber and Clouser, both of whom testified at trial.  The CenturyLink Plaintiffs point out that a portion of Schieber's video deposition was actually played at trial during counsel's cross examination of him about the term "net protocol conversion."  The CenturyLink Plaintiffs admit that Sprint's expert, Wood, and Felton, another Rule 30(b)(6) designee, did not testify at trial, so the

videos were not used.  However, the CenturyLink Plaintiffs argue that they should be able to recover these costs because Sprint listed them both as "will call" witnesses.  The CenturyLink Plaintiffs therefore contend that they properly prepared the videos for use at trial, and they should not be penalized by Sprint's last-minute decision not to call these individuals as witnesses.

Rule 54(d) allows a prevailing party to recover certain costs resulting from federal court litigation:

> Unless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days notice. On motion served within the next 7 days, the court may review the clerk's action.

Title 28, United States Code, Section 1920 defines the term "costs" as used in Rule 54(d) and enumerates taxable expenses. *Gaddis v. United States*, 381 F.3d 444, 450 (5th Cir. 2004).  Section 1920 provides:

> A judge or clerk of any court in the United States may tax as costs the following:
>
> (1)   Fees of the clerk and marshal;
>
> (2)   **Fees for printed or electronically recorded transcripts necessarily obtained for use in the case**;
>
> (3)   Fees and disbursements for printing and witnesses;
>
> (4)   Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5)   Docket fees under section 1923 of this title;
>
> (6)   Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1923 of this title....

(emphasis added).

8

"Rule 54(d)(1) contains a strong presumption that the prevailing party will be awarded costs." *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006). Usually, a successful litigant is also the prevailing party for purposes of Rule 54(d). *See Schwarz v. Folloder*, 767 F.2d 125, 130 (5th Cir. 1985). However, the Court's discretion to award costs is not unlimited: the costs must be allowable under § 1920; the costs must be supported by proper documentation; and the costs must be reasonable.

The CenturyLink Plantiffs are the prevailing party in this lawsuit for purposes of Rule 54(d). Sprint does not dispute their entitlement to recovery of $464.59 for copies and of $2,210.00 for the time of their expert, Wood, in preparation for and during his deposition.  The Court finds that the CenturyLink Plaintiffs are entitled to recover these costs, and they are hereby AWARDED.

However, the parties dispute the recovery of the full amount of both the video and printed transcripts of the same depositions.  "[P]revailing parties are entitled to recover the costs of original depositions and copies" under § 1920 "provided they were 'necessarily obtained for use in the case.'" *Fogleman*, 920 F.2d at 285.  However, this Court and others within this Circuit have refused to award costs for both deposition transcripts and video recordings when the video recordings were not actually used at trial. *See Stoffels v. SBC Communications, Inc.*, 05-0233, 2012 WL 2122191 at *2 (W.D. Tex. June 11, 2012) ("The Court notes that SBC Communications seeks recovery for the costs of the transcripts as well as the video recordings of these depositions. The Court does not generally award costs for both.").

First, with regard to Schieber, as the CenturyLink Plaintiffs point out, his video deposition was, in fact, used at trial.  The Court may not have cited to that deposition in its Opinion, but it was part of the evidence presented to and considered by the Court in rendering that Opinion.

9

Accordingly, the CenturyLink Plaintiffs are AWARDED $1,150.00 for the cost of Schieber's video deposition, as well as $1,435.45 for the costs of Schieber's and Sywenki's deposition transcripts.

However, the same is not true of the video depositions of Clouser, Wood, and Felton.  While those video depositions may have reasonably been obtained for use at trial, they were, in fact, not used, and the Court is awarding the costs of their deposition transcripts only.  Accordingly, the CenturyLink Plaintiffs' requests for the costs of these video depositions are DENIED, and only the deposition transcript costs will be awarded.

The Court also finds no reasonable basis to award the costs of live deposition streaming under § 1920.  It is not provided for in the statute, and it was for the convenience of the CenturyLink Plaintiffs and their counsel.  The CenturyLink Plaintiffs were well represented by able counsel at the depositions, and the cost of live streaming of the depositions, so as to include other counsel or CenturyLink employees, is not recoverable.  Thus, the CenturyLink Plaintiffs' requests for the costs of the live streaming depositions are DENIED.

In total, the Court hereby AWARDS the CenturyLink Plaintiffs costs of $9,176.84.[3]

_____

[3]The Court calculated costs as follows:

(1)    copying costs of $464.59 AWARDED;

(2)    deposition preparation and attendance for Wood of $2,210.00 AWARDED;

(3)    deposition costs for Hunsucker and Eppinette of $690.00 AWARDED;

(4)    deposition costs of $1,159 for Wood was reduced by $300 for live streaming, for a total of $859 AWARDED;

(5)    video deposition costs for Wood DISALLOWED;

(6)    deposition costs of $1,435.45 for Schieber/Sywenki were reduced by $150 for live streaming, for a total of $1,285.45 AWARDED;

### III.    Prejudgment Interest

The CenturyLink Plaintiffs next contend that the Court should award them prejudgment interest for Sprint's self-help violation of 47 U.S.C. § 201(b).  The CenturyLink Plaintiffs used the federal prime rate of 3.25% from December 17, 2015, forward, compounded monthly.   The CenturyLink Plaintiffs seek prejudgment interest through at least June 1, 2016, for a total of $1,426,157.55.

Sprint responds that the CenturyLink Plaintiffs are not entitled to recover both late payment charges and prejudgment interest.  Sprint argues that prejudgment interest and late payment charges serve the same purpose: to compensate for the lost time value of money.  Sprint further points out that the CenturyLink Plaintiffs conceded in another case that late payment charges represent prejudgment interest and thus sought only the late payment charge rate.

In their reply memorandum, the CenturyLink Plaintiffs argue that the Court's May 4, 2016 Judgment awarded both late payment charges and prejudgment interest.  If the May 4, 2016 Judgment is a "judgment" within the meaning of Rule 54(a), then Sprint failed to timely move to alter or amend the judgment.  The CenturyLink Plaintiffs further argue that the Court's Opinion in

---

(7)      video deposition costs of $1,150.00 for Schieber/Sywenki AWARDED;

(8)      deposition costs of $1,437.75 for Clouser/Felton were reduced by $150 for live streaming, for a total of $1,287.75 AWARDED;

(9)      video deposition costs for Clouser/Felton DISALLOWED; and

(10)     trial transcripts costs of $1,230.05 AWARDED.

this regard is consistent with the parties' joint verdict form [Doc. No. 184].[4]   The CenturyLink Plaintiffs contend that the parties contemplated that the Court could award prejudgment interest if the CenturyLink Plaintiffs prevailed on their Count III claim against Sprint in addition to their recovery of late payment charges on their Counts I and IV.   Moreover, the CenturyLink Plaintiffs argue that the time value of money is not the only reason for an award of interest, but under Fifth Circuit precedent, prejudgment interest is properly awarded if it furthers the congressional policies underlying the federal act at issue.   Finally, the CenturyLink Plaintiffs contend that Sprint inaccurately stated its position in another case involving breach of contract, not a § 201 violation as in this case.

First, the Court has determined that its May 4, 2016 Judgment does not constitute a "final judgment" under Rule 54(a).   Any arguments based on the finality of the judgment are thus inapplicable.

However, if, as Sprint argues, an award of prejudgment interest is duplicative of the award of late payment charges, then the Court's May 4, 2016 Judgment is inconsistent.   In its Opinion, the Court stated as follows:

> The Court has found that CenturyLink properly billed Sprint for VoIP calls between August 2007-July 2009.   Therefore, Sprint unjustly and unreasonably withheld payments due to CenturyLink to reduce its retroactive refund claim.   By doing so, Sprint violated [47 U.S.C.] § 201(b).   Judgment is entered in favor of CenturyLink and against Sprint on Count III.   **CenturyLink may not recover double damages, but may recover reasonable attorneys' fees under 47 U.S.C. § 206 and prejudgment interest**.

[Doc. No. 213, p. 23 (emphasis added)].   It was the clear intent of the Court to avoid double damages

---

[4]To ensure that all issues are addressed in its opinion, as a general practice, this Court asks attorneys in a bench trial to prepare a joint verdict form for the Court's use in ruling.

in this case, and the Court had already awarded the CenturyLink Plaintiffs late payment charges on the tariffed amounts.  Further, upon review of the cited law, the Court agrees with Sprint that the late payment charges serve to compensate the CenturyLink Plaintiffs for the lost value of their money during the time period in question.  No other damages were awarded for Sprint's violation of Section 301 for which the CenturyLink Plaintiffs could recover the lost value of their money.  To the extent that the CenturyLink Plaintiffs contend that the congressional policies underlying the act at issue support an additional award, the Court disagrees.  As the CenturyLink Plaintiffs are recovering late payments charges which appropriately compensate them for the lost value of the money, i.e., the lost tariff rates, and they will also recover attorneys' fees for Sprint's violation of Section 301, a further award of prejudgment interest would amount to a penalty not necessary to enforce the congressional policies underlying the Act.

However, one issue remains: the Court awarded late payment charges based on Sprint's failure to pay the tariffed amounts due to the CenturyLink Plaintiffs, but the CenturyLink Plaintiffs could not recover attorneys' fees for these violations.  The Court awarded attorneys' fees as a result of Sprint's Section 301 violation.  Therefore, the Court has reviewed the applicable law to determine whether prejudgment interest applies to the award of attorneys' fees.  The Court finds that it does not.

Under Section 206, the CenturyLink Plaintiffs should be awarded the "full amount of damages" necessary to make them whole, "together with" a "reasonable . . . attorney's fee," which is collected as an element of costs.  47 U.S.C. § 206.  Thus, by its plain language, the statute

contemplates that attorneys' fees will be awarded as costs.[5]  Costs do not typically include interest. *See* 28 U.S.C. § 1920; *see also* 10 C. WRIGHT, A. MILLER,  M. KANE, R. MARCUS, A. SPENCER, & A. STEINMAN, FEDERAL PRACTICE AND PROCEDURE §§ 2666, 2670, and 2675.4 (3d ed. 2016). Further, as a matter of equity, this is not a case where an award of prejudgment interest on attorneys' fees should be awarded, so as to further the promotion of, for example, civil rights litigation.  There is no evidence or argument that counsel for the CenturyLink Plaintiffs have been denied compensation during the time period of this lawsuit, only that they should be able to recover attorneys' fees because of Sprint's breach.

Accordingly, the CenturyLink Plaintiffs' request for an award of prejudgment interest is DENIED because such an award is duplicative of the award of late payment charges, is not necessary to further the congressional policies at issue, and because such an award should not be made on costs, including attorneys' fees, under § 206.  To the extent that this denial is inconsistent with the Court's May 4, 2016 Opinion and Judgment, they are AMENDED.

## IV.    Attorneys' Fees

Finally, the CenturyLink Plaintiffs request attorneys' fees of $1,168,323.00.

Having determined that attorneys' fees should be awarded, the Court must turn to a determination of a reasonable fee.  The Court begins with a lodestar analysis.  *See Perdue v. Kenny*

---

[5]In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby **for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee,** to be fixed by the court in every case of recovery, **which attorney's fee shall be taxed and collected as part of the costs in the case.**

47 U.S.C. § 206 (emphasis added).

*A. ex rel. Winn*, 559 U.S. 542, 551 (2010).  The lodestar amount is an objective determination made by multiplying the reasonable number of hours expended by counsel on the case by a reasonable hourly rate based on the prevailing market rates in the relevant community.  *See Thompson v. Connick*, 553 F.3d 836, 867 (5th Cir. 2008); *Perdue*, 559 U.S. at 551.

Attorneys' fees must be calculated at the prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation. *Johnson v. City of Monroe*, 06-0635, 2007 WL 4680476 at *2 (W.D. La. Nov. 27, 2007).  The party seeking attorneys' fees bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates. *Wells v. Regency Hosp. Co.*, 07-3775, 2008 WL 5273712 at *2 (E.D. La. Dec. 15, 2008); *see also Heck v. Buhler*, 07-00021, 2014 WL 2003270, at *2 (M.D. La. May 15, 2014) (citations omitted).  Usually, the relevant community is defined as the district in which the forum court sits. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002); *see also In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F.Supp.2d 732, 754 (S.D. Tex. 2008). However, under certain limited circumstances, out-of-district counsel may be entitled to the rates charged in their home districts. *See McClain v. Lufkin Indus. Inc.*, 649 F.3d 374 (5th Cir. 2011).  In *McClain*, the Fifth Circuit held that where "abundant and uncontradicted evidence prove[s] the necessity of turning to out-of-district counsel, the co-counsel's 'home rates' should be considered as a starting point for calculating the lodestar amount." *Id.* at 382. The court went on to find that out-of-district counsel was necessary where the record was flooded with "affidavits from a variety of expert employment lawyers who swore that no Texas attorneys were willing and able to assist in such a large case that might drag on for years without any guarantee of financial remuneration." *Id.* at 383.

In addition to determining the reasonable rate(s), the Court must also consider whether the total number of hours claimed is reasonable based on the nature and extent of the legal services rendered. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). Excessive or duplicative time is not compensable. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir.1993). At all times, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise 'billing judgment' with respect to hours worked and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437. If the applicant fails to exercise billing judgment, the Court may conduct a line-by-line analysis of the time records. *See Green v. Admin. of the Tulane Educ. Fund*, 284 F.3d 642 (5th Cir. 2002). In the alternative, and particularly where the time records are voluminous or complex, the Court "may make across-the-board cuts, so long as it sets forth a concise reason for its cuts." *Maxwell v. Angel-Etts of California, Inc.*, 53 F. App'x 561, 568 (Fed. Cir. 2002), opinion amended on reh'g (Jan. 2, 2003) (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1399-1400 (9th Cir.1992)).

The "lodestar method yields a fee that is presumptively sufficient," *Perdue*, 559 U.S. at 552, but the fee may be enhanced "where the method used in determining the hourly rate . . . does not adequately measure the attorney's true market value"; where "the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted"; where there are "extraordinary circumstances in which an attorney's performance involves exceptional delay in the payment of fees"; or in the "rare and exceptional" cases where "superior attorney performance is not adequately taken into account," and "the lodestar fee would not have been adequate to attract competent counsel." *Id.* at 554-56 (citations and internal quotation marks omitted).

16

A.      **Rates Requested**

In this case, counsel for the CenturyLink Plaintiffs provided the affidavits of Edward Bergin ("Bergin") [Doc. No. 131] and Michael Lockerby ("Lockerby") [Doc. No. 230]. Bergin is a partner at Jones Walker law firm in New Orleans, Louisiana. He averred that he and fellow partner Mark Mintz ("Mintz") have worked on this litigation since its inception in 2009, have devoted substantial time to the case, and their rates reflect the prevailing community rates for the New Orleans market. Bergin's affidavit further avers that the rates listed in their documentation are the preferred hourly rates they charged at the times the work was performed.

Similarly, Lockerby provided an affidavit averring that he is a partner in the law firm of Foley & Lardner LLP in its Washington, D.C. office. [Doc. No. 230]. Lockerby further averred that he has had primary responsibility for this case, but that there has been a core group representing the CenturyLink Plaintiffs. Three persons--Lockerby, attorney Benjamin Dryden ("Dryden"), and paralegal Mary Ann Cochran--have worked on the case since its inception in 2009. Two other attorneys, Donna A. Bucella ("Bucella") and Jennifer M. Keas ("Keas"), were also part of the core group who represented the CenturyLink Plaintiffs in this litigation. Lockerby further averred that the attorneys and staff improved the efficiencies and economies of representation because they were also assigned to a related case in the Eastern District of Virginia. After this case was returned to the Court's docket in 2014, and as it neared trial, Lockerby averred that Jarren N. Ginsburg ("Ginsburg") a 2014 law school graduate, was added to the core group and trial team, so as to keep billing rates lower on certain tasks.

Sprint contests the CenturyLink Plaintiffs' requested rates. Sprint contends that the presumptively reasonable rate is that charged in the Western District of Louisiana, and the

CenturyLink Plaintiffs have failed to present any evidence of that rate. Nonetheless, Sprint has presented affidavits from two experienced litigators in Monroe and, based on those affidavits, argues that the CenturyLink Plaintiffs should be limited to rates of $200 per hour for partners and senior counsel, to $175 per hour for Mintz who worked as an associate and partner during the term of this case, and to $150 per hour for associates. Finally, Sprint argues that the CenturyLink Plaintiffs should not receive attorneys' fees at the rates set forth in Lockerby's affidavit because they have failed to establish that it was necessary to retain a Washington, D.C. commercial litigator to try this case.

The CenturyLink Plaintiffs reply that no law firms in Monroe are equipped to handle this type of complex telecommunications litigation, and it was necessary for them to seek counsel in New Orleans and Washington, D.C. They point out that Sprint also retained counsel from outside Monroe, namely Minneapolis and Shreveport. Finally, they contend, citing to case law, that the rates sought are commensurate with those in the communities in which they practice.

First, the Court finds that the CenturyLink Plaintiffs have provided sufficient evidence to show that Monroe is not the relevant community for calculation of the prevailing market rate. It cannot be disputed that this was a lengthy, complicated case which required the dedication of resources and man hours that could not be staffed by small firms in this area. Indeed, as the CenturyLink Plaintiffs point out, Sprint did not employ a Monroe firm itself. *See generally McClain*, 649 F.3d at 388 (Dennis, J., concurring) ("'[W]hen the defendant has hired expensive, out of town counsel, the plaintiffs seem justified in saying that the nature of the case required the skills of out of town specialists.'") (quoting *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 n. 18 (7th Cir.1982)).

However, the Court finds that the CenturyLink Plaintiffs have failed to establish that they

18

should be awarded the requested rates for Washington, D.C.  While this case was complicated commercial litigation, the Court finds that the CenturyLink Plaintiffs retained qualified counsel in New Orleans.  Bergin's affidavit, as well as the Court's own observations, show that he and Mintz could and did provide competent and able substantive representation of the CenturyLink Plaintiffs. Bergin had previously represented CenturyLink and clearly had relevant commercial litigation experience.  Although the Court has certainly taken note of Bergin's averments of the division of work between the two firms[6] and the averments of Bergin and Lockerby as to the economies achieved by such representation, those averments do not necessitate the application of the Washington, D.C. rates.  The CenturyLink Plaintiffs chose to employ counsel outside the state, which may have been a prudent business decision, but for purposes of determining a reasonable rate for an attorneys' fees award, the Court cannot say that competent counsel was unavailable anywhere other than Washington, D.C., particularly where, as here, the CenturyLink Plaintiffs actually employed competent counsel in New Orleans.  The Court, therefore, will apply New Orleans rates for which evidence is provided.[7]

During the course of this litigation in the years 2009 through 2016, Bergin charged rates between $395 and $475.  The Jones Walker billing records provide summaries for each month, so

---

[6]Bergin avers that "Foley took the lead in discovery, drafting motions, and pretrial order. Jones Walker reviewed and edited the motions, pleadings and other papers, consulted on strategy and sent only Mark Mintz to participate in trial." [Doc. No. 215, Exh. 131, ¶9].

[7]Bergin, who was admitted to practice in 1979 and has been a partner with Jones Walker in New Orleans since 1984,  averred that his "hourly billing rate and Mr. Mintz's hourly rate are reasonable and consistent with the market rate of New Orleans, based on [their] relevant experience and the services [they] provided." [Doc. No. 215, Exh. 131, ¶ 8].  Although Sprint countered that the relevant market was the Western District of Louisiana, Sprint did not specifically challenge Bergin's averments that the requested rates are consistent with the New Orleans market for their experience and this type of case.

19

that the Court can determine that, on average, Bergin billed approximately $430 per hour.   In addition to Bergin's affidavit, the Court's review of relevant case law indicates that such a rate would be commensurate with the New Orleans market during this time period. *See generally Oreck Direct, LLC v. Dyson, Inc.*, No. 07-2744, 2009 WL 1649503, at *4 (E.D. La. June 8, 2009) (identifying the top rate for partner-level attorneys in the New Orleans market as being between $400 and $450 per hour in 2009).   For those Foley Lardner partners and/or senior counsel whose experience is more commensurate to that of Bergin, the Court has applied a rate of $430 per hour.[8]

During the course of this litigation, Mintz worked as both an associate and a partner. Between 2009 and 2013,[9] the Court has determined that, as an associate, Mintz charged rates between $185 and $240.   The Court further determined that, on average, Mintz charged approximately $200 per hour. The Court will apply this $200 per hour rate for all work by associates.

Between 2014 and 2016, as a partner, Mintz charged rates between $280 and $300 per hour. On average, Mintz charged $290 per hour.   For those partners and/or senior counsel whose experience is more commensurate to that of Mintz, the Court has applied a rate of $290 per hour.

Finally, the CenturyLink Plaintiffs failed to provide any evidence of the market rate for a paralegal in New Orleans.   As they failed to meet their burden, the Court cannot determine a reasonable rate for paralegal work or determine the lodestar amount, and no fees will be awarded for the paralegal work.

---

[8]This rate is obviously more than Bergin charged during a portion of this litigation, but within the relevant market rates and far less than the rates sought for the Foley Lardner attorneys. Thus, the Court has determined it to be reasonable.

[9]Mintz had no billable hours for 2013 in the documentation provided.

## B.      Hours Billed and Other Considerations

Having determined the reasonable hourly rates, the Court now turns to a review of the billing

records.   In support of the requested fees, Bergin attached Jones Walker billing records from

November 2009 through April 2016. [Doc. No. 215, Exh. 131-A].   Likewise, Lockerby attached

Foley Lardner billing records from October 2009 through April 2016. [Doc. No. 215, Exh. 132-A].

In addition to providing detailed billing records from both law firms, the CenturyLink Plaintiffs

contend that their counsel have exercised billing judgment in the following ways:

    (1)    The CenturyLink Plaintiffs did not request fees or costs for Jones Walker attorneys and staff who worked on this case, but who did not devote substantial time to the case [Doc. No. 215, Exh. 131, ¶6];

    (2)    The CenturyLink Plaintiffs likewise did not request the fees and costs billed by all Foley Lardner attorneys and staff, but limited their request to six (6) attorneys and one (1) paralegal;

    (3)    The CenturyLink Plaintiffs employed the Foley Lardner firm to serve as counsel in both this case and in Virginia litigation[10], *see Central Tel Co. of Va. V. Sprint Commc'ns Co. of Va., Inc.*, 759 Fed. Supp.2d 789 (E.D. Va. 2011), *aff'd* 715 F.3d 501 (4th Cir.), *cert. denied*, 134 S. Ct. 423 (2013), which allowed them to "achieve significant efficiencies that resulted in eliminating duplicative research, strategy, and discovery." [Doc. No. 215, p. 8; Exh. 230, ¶ 9];

    (4)    Attorneys at Jones Walker and Foley Lardner divided responsibilities, so as to avoid duplicative and overlapping charges. [Doc. No. 215, Exh. 131, ¶ 9];

    (5)    Partners and more senior attorneys for the CenturyLink Plaintiffs assigned work to attorneys with lower billing rates to keep billing rates as low as possible. [Doc. No. 215, Exh. 131, ¶ 9; Exh. 230, ¶10].

Citing specific examples, Sprint responds that the CenturyLink Plaintiffs' requested hours

should be reduced because there are entries which are (1) duplicative and excessive, (2) related to

---

[10]Legal fees in the Virginia case were not recoverable because that case involved breaches of the interconnection agreements, and the agreements did not provide for attorneys' fees.

motions they lost, (3) vague or constitute block billing, (4) related to claims not litigated at trial, and (5) unrecoverable clerical tasks.  In sum, Sprint argues that the Court should eliminate all paralegal hours billed and impose a 67% reduction of the requested hours.

In their reply, the CenturyLink Plaintiffs point out that they have already exercised billing judgment in the ways identified, and the request for a 67% reduction far exceeds cases where courts have made across-the-board cuts for attorneys' failures to exercise billing judgment at all.  They contend that Sprint has not pointed to blatant errors that would support any reduction and certainly not the type of reduction cited.  Finally, if anything, the CenturyLink Plaintiffs contend that an upward adjustment to the lodestar is warranted in this case.[11]

In any submission of attorneys' fees, in the Court's experience, the opposing party can and does find some examples to support its argument that the prevailing party's fees should be reduced.  In this case, the CenturyLink Plaintiffs submitted a total of 618 pages of billings records along with the detailed affidavits of Lockerby and Bergin.  It is not in the interest of justice or judicial economy for this Court–or any court–to examine those entries line by line.  Sprint suggests that the Court should impose a 67% reduction because of the issues it points out.  However, such a reduction is far in excess of across-the-boards cuts employed by courts for these types of issues.  Moreover, on balance, the Court finds that the CenturyLink Plaintiffs have provided well-documented billing records that, as a whole, are reasonable and not duplicative.  As set forth above, counsel for the

---

[11]The parties dispute whether the Fifth Circuit's decision in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-18 (5th Cir. 1974), remains good law after the Supreme Court's 2010 decision in *Perdue*.  Given the Court's conclusion that the lodestar, as adjusted, provides for reasonable attorneys' fees in this case, the Court need not reach that issue.  Further, even if the *Johnson* factors were applied, the Court would reach the same determination that the attorneys' fees awarded are appropriate compensation in this case.

CenturyLink Plaintiffs had already exercised billing judgment in a number of significant ways prior to submitting their fee request.  Finally, the Court has disallowed recovery for any paralegal work because of the CenturyLink Plaintiffs' failure to provide the market rate for paralegals in New Orleans.  Accordingly, the Court finds that the number of hours requested is reasonable, particularly in light of the complex nature of this lengthy case and the exercise of billing judgment, and a reduction is not warranted.  Applying the lodestar formula, the Court calculates attorneys' fees as follows:

| NAME | HOURS CLAIMED | RATE | FEE |
|---|---|---|---|
| Lockerby (partner) | 713.3 | $430 | $306,719.00 |
| Acosta (associate) | 13.3 | $200 | $2,660.00 |
| Bucella (of counsel) | 19.5 | $290 | $5,655.00 |
| Keas (associate)[12] | 52.8 | $200 | $ 10,560.00 |
| Keas (senior counsel) | 4.6 | $290 | $   1,334.00 |
| Dryden (associate) | 61.1 | $200 | $ 12,220.00 |
| Dryden (senior counsel) | 409.8 | $290 | $118,842.00 |
| Ginsburg (associate) | 774.1 | $200 | $154,820.00 |
| Bergin (partner) | 331 | $430 | $142,330.00 |
| Mintz (associate)[13] | 33.1 | $200 | $ 6,620.00 |
| Mintz (partner) | 111.3 | $290 | $ 32,277.00 |

**TOTAL:**                                                                                          **$794, 037.00**

---

[12]The Court included Keas' requested fees as an associate and senior counsel and relied on the documentation provided, to the extent that the hours differ from those determined by Sprint.

[13]The hours calculated by the Court are based on the time and fee summary with each monthly bill submitted to CenturyLink, to the extent that the hours differ from those determined by Sprint.

Having determined reasonable rates for the attorneys involved and finding that the hours requested are reasonable, the Court finds that no circumstances indicate that a further adjustment to the lodestar should be made.  Accordingly, the CenturyLink Plaintiffs are AWARDED attorneys' fees in the total amount of $794,037.00.

## III.   CONCLUSION

For the foregoing reasons, the CenturyLink Plaintiffs' request for fees, costs, and relief [Doc. No. 215] is GRANTED IN PART and DENIED IN PART.   To the extent that the CenturyLink Plaintiffs request prejudgment interest, the request is DENIED, and the Court's May 4, 2016 Opinion and Judgment [Doc. Nos. 213 & 214] are AMENDED.  The request is otherwise GRANTED to the following extent:

(1)   Additional late payment charges for the period between February 3 and July 25, 2016, are AWARDED in the amount of $368,649.93;

(2)   Costs are hereby AWARDED in the amount of $9,176.84; and

(3)   Attorneys' fees are hereby AWARDED in the amount of $794,037.00.

Together with the Court's May 4, 2016 Judgment awarding damages of $8,755,402.46, plus late payment charges of $3,805,343.00 through February 2, 2016, the CenturyLink Plaintiffs are awarded a total amount of $13,732,609.23 with post-judgment interest thereon at the federal judgment rate from this date until the judgment is paid.

MONROE, LOUISIANA, this 25th day of July, 2016.

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**

24